1

2

3

4

5

6

7

FILED & ENTERED

JAN 10 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch    DEPUTY CLERK

8

UNITED STATES BANKRUPTCY COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

RIVERSIDE DIVISION

11

12

13    In re:

14    LA GRANJA 240, L.P.,

15                              Debtor.

16

17

18

Case No.: 6:21-bk-12906-WJ

CHAPTER 12

**MEMORANDUM OF DECISION
REGARDING 11 U.S.C. § 109(G)(2)**

19

20

21

22

23

24

25

26

27

28

1    Section 109(g)(2) of the Bankruptcy Code prohibits a debtor from filing a new bankruptcy

2    case for 180 days if the court dismissed a prior bankruptcy case after "the debtor requested and

3    obtained the voluntary dismissal of the case following the filing of a request for relief from the

4    automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2).  So, if a bankruptcy

5    trustee (or a creditor) files a motion to dismiss a case and the debtor asks the court to grant the

6    motion or otherwise joins in or supports the motion, does the 180-day prohibition under

7    11 U.S.C. § 109(g)(2) against filing a new bankruptcy case arise?  For the reasons stated below, the

8    court concludes that the 180-day bar to re-filing a new case does apply.

9

10    **I.    THE PLAIN LANGUAGE OF 11 U.S.C. § 109(g)(2) APPLIES.**

11    When a debtor voluntarily files a request for dismissal of a bankruptcy case after the filing

12    of a motion for relief from stay, section 109(g)(2) applies.  Some courts have debated whether they

13    need to follow the provisions of section 109(g)(2) or have the discretion to not follow the statute

14    under certain circumstances.[1]  However, pursuant to the "plain meaning" of the statute, a large

15    majority of courts have held that the provisions of section 109(g)(2) apply in any case in which a

16    debtor voluntarily requests dismissal of a case at any time after the filing of a motion for relief

17    from stay.[2]  This is the "majority view"[3] and this court follows it.[4]

18    [1] In re Durham, 461 B.R. 139 (Bankr. D.Mass. 2011); In re Covelli, 550 B.R. 256 (Bankr.
       S.D.N.Y. 2016); In re Hutchins, 303 B.R. 503 (Bankr. N.D.Ala. 2003); Ruth v. Swigert (In re
19    Swigert), 601 B.R. 913 (Bankr. M.D.Pa. 2019).

20    [2] Andersson v. Security Fed. Sav. and Loan of Cleveland (In re Andersson), 209 B.R. 76,
       78 (6th Cir. BAP 1997) (affirming a bankruptcy court that dismissed a case pursuant to the
21    majority view of section 109(g)(2) and stating that 'statutes 'must be read in a 'straightforward'
       and 'commonsense' manner,' and that 'when we can discern an unambiguous and plain meaning
22    from the language of a [statute], our task is at an end." (citations omitted)); In re Bussell,
       626 B.R. 891, 893 (E.D.Mich. 2021) (citing Andersson with approval and quoting Turner as
23    follows: "Section 109(g)(2) applies, and requires dismissal, in every situation in which, in a prior
       case pending within 180 days before the filing of the present case, a creditor filed a motion for
24    relief from stay and the debtor later voluntarily dismissed the case, regardless of the debtor's
       good faith or whether there was any particular connection between the two events."); In re Stachurski,
25    613 B.R. 251 (E.D.Mich. 2020) (same); In re Turner, 583 B.R. 910, 911 (E.D.Mich. 2018) (same);
       In re Steele, 319 B.R. 518, 520 (E.D.Mich. 2005) ("This Court agrees with the court's analysis in
26    Andersson.  The language of 11 U.S.C. 109(g)(2) is unambiguous, and while the result may be
       harsh, the result is completely dictated by a debtor's actions.  Once a motion for relief from stay
27    has been filed, if a debtor chooses to voluntarily dismiss his case, he cannot file another case for
       180 days following the dismissal."); Kuo v. Walton, 167 B.R. 677, 679 (M.D.Fla. 1994) (affirming
28    the order of a bankruptcy judge who dismissed a case under section 109(g)(2) and finding that "the

application of § 109(g)(2) is mandatory in situations described by that section, as it is an eligibility requirement not subject to the discretion of the court.  Neither the purposes nor the intent of the voluntary dismissal of the first bankruptcy claim are relevant in considering the validity of the later petition.  Where the facts of a case fit § 109(g)(2), that section must be applied, regardless of surrounding circumstances."); In re Munkwitz, 235 B.R. 766, 768 (Bankr. E.D.Pa. 1999) (holding that "whenever a debtor obtains a voluntary dismissal after a creditor has filed a motion to be relieved from a stay, § 109(g)(2) is triggered.  This occurs irrespective of the time interval between the two events or the disposition of the creditor's motion."); Chrysler Fin. Corp. v. Dickerson (In re Dickerson), 209 B.R. 703, 706 (W.D.Tenn. 1997) (enforcing the 180-day bar of section 109(g)(2) and reversing the decision of a bankruptcy court that had embraced the discretionary view of section 109(g)(2) and declined to follow the 180-day bar); In re Smith, 58 B.R. 603, 605 (W.D.Pa. 1986) (affirming the bankruptcy court and interpreting the statute strictly and holding that when a debtor files repetitive bankruptcy cases the "mandate is clear; the debtor has no standing to claim any relief under the Bankruptcy Act . . . ."); In re Gill, 584 B.R. 63, 71 (Bankr. W.D.Okla. 2018) ("The Court finds that the language of § 109(g)(2) is mandatory.  The statute specifically states that no individual can be a debtor if within the preceding 180 days the individual requested and received a voluntary dismissal of the first case following the filing of a request for relief from the automatic stay.  If these preconditions are met, the debtor is barred from filing the second petition for 180 days after the voluntary dismissal, and the Bankruptcy Court is prohibited from accepting the petition for filing."); In re Guerrero, 540 B.R. 270, 282 (Bankr. S.D.Tex. 2015) ("This Court will assume that Congress is satisfied with the way in which the majority of courts apply a chronological standard to § 109(g)(2).  This Court joins the majority view that has embraced a chronological reading of 'following' in § 109(g)(2)."); In re Gibas, 543 B.R. 570, 593 (Bankr. E.D.Wis. 2016) (embracing the plain meaning of section 109(g)(2) and stating that this "section does not direct the court to consider particular circumstances when applying the statute, nor does it set out a test for good faith, or even use words like 'may' that authorize judicial discretion.  Instead, section 109(g)(2) merely prescribes that when a particular sequence of events occurs, including the debtor's voluntary filing of a request to dismiss, the debtor is ineligible to refile for 180 days.  This court declines to add more conditions to section 109(g)(2) than what its text directs."); In re Riekena, 456 B.R. 365, 368 (Bankr. C.D.Ill. 2011) ("It is widely acknowledged that Congress enacted section 109(g)(2) for the purpose of curbing abusive repetitive filings by debtors attempting to nullify a stay relief order entered in a prior case by obtaining a new automatic stay upon refiling."); In re Rankin, 288 B.R. 201, 204 (Bankr. E.D.Tenn. 2003) ("The language of § 109(g)(2) is clear and mandatory, 'designed to prevent misconduct by a debtor,' regardless of any indicia of good or bad faith."); In re Rives, 260 B.R. 470, 472 (Bankr. E.D.Mo. 2001) (dismissing case filed in violation of the 180-day bar to refiling and stating the "language of Section 109(g) is mandatory . . . ."); In re Richardson, 217 B.R. 479, 493 (Bankr. M.D.La. 1998) ("This Court concludes that an interpretation of § 109(g)(2) which gives each word its primary meaning leads to no absurd consequences."); In re Jarboe, 177 B.R. 242, 245 (Bankr. D.Md. 1995) (holding that section 109(g)(2) must be "read literally" and, therefore, a bar to re-filing is required when a debtor files a request to dismiss the case after the filing of a motion for relief from stay even when the creditor filed the motion for relief from stay erroneously); In re Rist, 153 B.R. 79, 80 (Bankr. M.D.Fla. 1993) (following the "mandatory" view of section 109(g)(2) and finding that "neither the purpose nor the intent of the voluntary dismissal were relevant in considering the validity of the subsequent petition" and, therefore, dismissing a bankruptcy case filed within 180 days of a prior bankruptcy case and vacating the previously entered confirmation order); In re Gregory, 110 B.R. 911 (Bankr. E.D.Mo. 1989) (dismissing a case filed in violation of section 109(g)(2)); In re Denson, 56 B.R. 543, 546 (Bankr. N.D.Ala 1986) (dismissing a second chapter 13 bankruptcy case filed within 180 days of a prior case – after relief from stay was granted – and holding that "the lack of any apparent ambiguity in the language of § 109(f) [the predecessor to section 109(g)] . . . the bankruptcy judge is of the opinion that the Court is not free to tamper with the statute, regardless of the debtor's motives in having the prior case dismissed, that the amendment squarely fits the circumstances here presented to the Court, and that the debtor may not maintain the present case."); In re Keziah, 46 B.R. 551, 554 (Bankr. W.D.N.C. 1985) (dismissing a case filed in

violation of section 109(f)(2) – the predecessor to section 109(g)(2) and holding that "the section clearly states 'no individual' can be a debtor who has been a debtor if within the preceding 180 days that individual requested a voluntary dismissal of a first case following the filing of a request for relief from stay.  The command is clear and there is no provision authorizing the Bankruptcy Judge to use his judgment to determine whether the statute should apply."); In re Binkley, 2021 Bankr. LEXIS 2623, *12 (Bankr. W.D.Wis. 2021) ("The Court declines to apply the discretionary approach because it is not supported by the plain language of the statute or any other cannon of statutory construction."); see also, In re Bigalk, 813 F.2d 189 (8th Cir. 1987) (section 109(g)(2) applies when debtors file repetitive bankruptcy cases to forestall foreclosure sales); Leafty v. Aussie Sonoran Capital, LLC (In re Leafty), 479 B.R. 545 (9th Cir. BAP 2012) (affirming dismissal under section 109(g)(2) in a typical case in which a debtor sought to dismiss her first bankruptcy case the morning of a foreclosure sale in order to file a second bankruptcy case later that morning to stop the foreclosure sale); In re Stuart, 297 B.R. 665, 668 (Bankr. S.D. Ga. 2003) ("I conclude from the language of § 109(g)(2), in conjunction with guidance from binding case law set out above, that Congress intended to make debtors who dismiss and refile in the face of a motion for relief ineligible, regardless of their subjective state of mind or intent, and did not intend for a bankruptcy court to condition § 109(g)(2)'s application upon a judicial determination regarding a debtor's intent."); In re Miller, 1999 Bankr. LEXIS 739, *2 (Bankr. E.D.Pa. 1999) (holding that the "court agrees with the reasoning of Munkwitz" and other cases which confirm that the debtor is "barred from refiling for 180 days.  She cannot then refile.  Section 109(g)(2) is self executing, and any attempt to violate § 109(g)(2) would, in this context, result in severe sanctions against the Debtor and her counsel."); In re Sakhrani, 2006 Bankr. LEXIS 3337, *6-7 (Bankr. D.N.J. 2006) ("The Third Circuit reads § 109(g) literally, as it is patently unambiguous, interpreting the word 'following' as subsequent in time. The 180-day provision is applied without regard to the circumstances or equities of the case, or a causal relationship between the motion for relief from the automatic stay and voluntary dismissal.  Section 109(g) operates irrespective of the interval between the filing for relief from the automatic stay and the voluntary dismissal.  Whenever practicable, statutory text is read and applied literally.  When used as a preposition, the ordinary meaning of the word 'following' is 'subsequent to.' Webster's Third New International Dictionary 883 (3d ed. 1993)." (citations omitted)); In re Narod, 138 B.R. 478, 483 (E.D.Pa. 1992) ("[Section 109(g)(2)], the application of which is mandatory rather than discretionary, bars from eligibility for filing under the Code, for a period of 180 days, any person who sought and obtained voluntary dismissal of the case following a request for relief from the Code's automatic stay provisions. Congress enacted section 109(g) to prevent abuse of the bankruptcy system through multiple filings."); Van Erickson v. Ford Motor Credit Co., 2006 U.S. Dist. LEXIS 96849, *4 (D.Utah 2006) (holding that while "there is a split of authority on whether section 109(g)(2) is mandatory or discretionary . . . [t]his Court believes the better reasoned cases are those which follow the plain language of the statute and hold that its provision is mandatory rather than discretionary."); In re Sakhrani, 2006 Bankr. LEXIS 3337 (Bankr. D.N.J. 2006) (the 180 day bar of section 109(g)(2) applies after a debtor voluntarily filed a motion to dismiss a chapter 11 case after the court granted a motion for relief from stay); Ned H. Waxman, Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2), 48 Ariz. L. Rev. 149 (2006) ("This Article will show that the application of 109(g)(2) is mandatory, and not discretionary, based upon a long-standing rule of statutory interpretation enunciated by the United States Supreme Court, as well as the legislative history to 109(g)(2)."); Harry Wright, IV, Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earlier Dismissal of Their Case?, 7 Bankr. Dev. J. 103, 119 (1990) ("Despite the arguments in favor of reading Section 109(g)(2) as discretionary, courts should interpret the provision as mandatory.  The language of the statute is plain.").

The court notes that three BAP decisions reach opposition conclusions: Andersson v. Security Fed. Sav. and Loan of Cleveland (In re Andersson), 209 B.R. 76, 78 (6th Cir. BAP 1997) (applying the plain language of section 109(g)(2)); In re Luna, 122 B.R. 575 (9th Cir. BAP 1990) (holding that application of section 109(g)(2) is discretionary and refusing to enforce section 109(g)(2)); Leafty v. Aussie Sonoran Capital, LLC (In re Leafty), 479 B.R. 545 (9th Cir. BAP 2012) (affirming the order of a bankruptcy judge dismissing under section 109(g)(2)).  As all three

are BAP decisions, none are binding on this court. <u>Bank of Maui v. Estate Analysis</u>, 904 F.2d 470 (9th Cir. 1990). However, the <u>Andersson</u> decision has the best reasoning of the three cases and follows the majority view.

In addition, while <u>Luna</u> reached a decision opposite of <u>Andersson</u>, the Bankruptcy Appellate Panel for the Ninth Circuit later made it clear in <u>Leafty v. Aussie Sonoran Capital, LLC (In re Leafty)</u>, 479 B.R. 545 (9th Cir. BAP 2012) that the <u>Luna</u> decision was limited to its unusual facts based on a "narrow, equitable exception to dismissal under § 109(g)(2)." <u>Id.</u> at 551. <u>Luna</u> involved rare facts centered upon a "conditional" order granting relief from stay. <u>Leafty</u>, on the other hand, involved a classic case in which a debtor dismissed her first bankruptcy case the morning of a foreclosure sale in order to file a second case later that morning to stop the foreclosure sale. Under these routine set of facts, the <u>Leafty</u> court held that Luna had "no application in this case." <u>Id.</u>

[3] <u>In re Guerrero</u>, 540 B.R. 270, 282 (Bankr. S.D.Tex. 2015) ("This Court will assume that Congress is satisfied with the way in which the majority of courts apply a chronological standard to § 109(g)(2). This Court joins the majority view that has embraced a chronological reading of 'following' in § 109(g)(2)."); Ned H. Waxman, <u>Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2)</u>, 48 Ariz. L. Rev. 149, 151 (2006) ("There are four approaches concerning the application of 109(g)(2), and the majority view holds that the plain language of 109(g)(2) is mandatory.").

[4] The court embraces the "majority view" because it follows the plain language of the statute. Case authority, legal reasoning and the language of the statute support the majority view. To not follow the plain language would run afoul of the responsibility of a judge to interpret and apply laws as written by Congress. It would also invite mischief that the language of the statute forbids. One bankruptcy court explained the matter exceptionally well in <u>In re Richardson</u>, 217 B.R. 479 (Bankr. M.D.La. 1998). After exhaustively analyzing the various views of interpreting section 109(g)(2), the court followed the plain language of the statute and stated:

> "Some bankruptcy courts are apparently capable of unerringly detecting the will of the debtor. These courts can ferret out, on a case-by-case basis, a debtor's motives in filing a motion for voluntary dismissal, and can determine whether and/or when it is appropriate to apply the law. This Court is not so perceptive or wise. In fact, it appears to this Court that Congress may have intended to avoid case-by-case adjudication when it drafted § 109(g)(2). Congress may have concluded that some debtors would be capable of convincing a bankruptcy court such as this one that their motives were pure, when in fact they were not. Alternatively, Congress may have determined that it wasn't worth the bankruptcy courts' time or effort to decide which debtors were attempting to abuse the system.

> "Finally, it seems completely rational to believe that Congress intended the statute to be applied as written, so that debtors would know the consequences of dismissal after a motion for relief from stay, and would avoid effectuating it voluntarily unless the benefits outweighed the downside. Courts who refuse to apply the law as written do no one, not even the debtors for whom they feel so, any favors. By creating a guessing game the risks increase as do the costs of protecting legal rights. It is enough work to apply the law and do it right. Do we need to create the extra class of litigation, i.e., over whether the law 'ought' to apply this time or not?"

<u>Id.</u> at 492-93.

Moreover, section 109(g)(2) would apply in this case under any of the theories of interpreting section 109(g).  As discussed below, the debtor in this case seeks immediate dismissal of this case in order to file a new case to stop a foreclosure sale scheduled in three days by the creditor who recently obtained relief from stay in this pending case.  Under this set of facts, courts who reject the "majority view" would still apply the 180-day bar of section 109(g)(2).[5]  Under any

_____

[5] If a debtor seeks to re-file a new bankruptcy case to forestall the creditor who obtained relief from stay in the prior case, the 180-day bar applies under any interpretation of section 109(g)(2). Moran v. Frisard (In re Ulmer), 19 F.3d 234 (5th Cir. 1994) (under any interpretation of section 109(g)(2), the statute applies when a debtor files a second case to stop the collection efforts of the creditor who obtained relief from stay in the first case); In re Bigalk, 813 F.2d 189 (8th Cir. 1987) (section 109(g)(2) applies when debtors file repetitive bankruptcy cases to forestall foreclosure sales); In re Evansingston, 608 B.R. 210, 218 (Bankr. E.D.Ark. 2019) (adopting the causal connection view but still finding that the 180-day bar of section 109(g)(2) applied because the debtor filed the second case to stop a foreclosure sale by a creditor who obtained relief from the automatic stay in the first case); Rivera v. Bracetty Matos (In re Rivera), 494 B.R. 101, 106-107 (1st Cir. BAP 2013) ("We need not adopt a particular approach in this case, however, as this case clearly falls within § 109(g)(2) under any approach.  In the Debtor's first case, the bankruptcy court granted Bracetty relief from stay to continue foreclosure proceedings.  Once the foreclosure sale was scheduled, the Debtor moved to voluntarily dismiss his case so that he could file a new one to stay the sale.  The bankruptcy court granted the dismissal (as it was required to do), and, a few hours later that same day, the Debtor filed the subject petition.  The Debtor admittedly dismissed his case and refiled the same day in order to overcome the grant of relief from the stay in his prior case, which is exactly the practice § 109(g)(2) was intended to defeat. The Debtor was not eligible to file the second case under the mandatory language of § 109(g)."); In re Fletcher, 599 B.R. 282, 288 (Bankr. E.D.Va. 2019) (adopting the causal approach, not the plain language view, when interpreting section 109(g)(2) but, nevertheless, applying section 109(g)(2) to dismiss one of the debtors from the case because that debtor filed the request to dismiss in the prior case after the filing of a relief from stay motion and filed the new case on "the night before the scheduled foreclosure" in order to "get a little bit more time in the house."); In re Durham, 461 B.R. 139, 142 (Bankr. D.Mass. 2011) (embracing the "causal connection approach" but dismissing the case with a 180-day bar to re-filing because the debtors obtained dismissal of their first bankruptcy case six days after relief from stay was filed and then the debtors re-filed two months later); In re Riekena, 456 B.R. 365, 368 (Bankr. C.D.Ill. 2011) ("It is widely acknowledged that Congress enacted section 109(g)(2) for the purpose of curbing abusive repetitive filings by debtors attempting to nullify a stay relief order entered in a prior case by obtaining a new automatic stay upon refiling."); In re Buck, 306 B.R. 225, 306 B.R. 225, 228 (Bankr. E.D.Tenn. 2004) (discussing the various views of section 109(g)(2) and holding that "regardless of how the court interprets it" section 109(g)(2) was violated because the debtors filed the second case to stall the creditor who previously obtained relief from stay); In re Hutchins, 303 B.R. 503, 509 (Bankr. N.D.Ala. 2003) (declining to apply section 109(g)(2) but indicating it would have done so in the context of 'abusive filings' which the court defined as "repetitive filings where a debtor is not paying and uses the automatic stay in order to prevent collection activity by creditors while debtor avoids making payments to creditors."); In re Roland, 224 B.R. 401, 404 (Bankr. E.D.Mo. 1997) (holding section 109(g)(2) applied "[r]egardless of whether one applies the view that a court may utilize discretion in applying section 109(g)(2) or, the alternative view that the section's application is mandatory" because the debtors filed the second case "to thwart an imminent foreclosure."); In re Ramos, 212 B.R. 29, 30 (Bankr. D.P.R. 1997) (rejecting the discretionary view and mandatory view of section 109(g)(2) and embracing an "intermediate approach" but, nevertheless, dismissing a second chapter 13 case with a 180-day bar to re-filing

theory of interpreting section 109(g)(2), the 180-day bar would apply.  Congress created

section 109(g)(2) to prohibit precisely this activity.[6]

Having laid the initial legal foundation for the matter, the central issue in this case requires

consideration of when a debtor takes sufficient steps to trigger application of section 109(g)(2).  In

the words of the statute, has the debtor in this case "requested" a voluntary "dismissal of the case

following the filing of a request for relief from the automatic stay . . . ."  For the following reasons,

the court concludes the debtor has made such a request.

---

pursuant to section 109(g)(2) because the debtors filed their second bankruptcy case three weeks
after they voluntarily dismissed their first case after a creditor obtained relief from stay); In re
Keul, 76 B.R. 79, 81-82 (Bankr. E.D.Pa. 1987) (finding that the 180-day bar of section 109(g)(2)
applies and stating that "I need not reach the question whether the provisions of section 109(g)
must be followed literally; for even if I assume arguendo that some discretion in application may
be utilized, there is no basis in the record before me warranting the exercise of such discretion.
The debtors concede that their actions in dismissing their former case and refiling the present
petition were done to frustrate a creditor who had obtained relief from stay and was about to
foreclose.  As Collier notes, this is the very ill section 109(g)(2) was designed to cure.  The instant
case does not present a situation where the dismissal was unconnected to the motion for relief; nor
does it involve a case where the request for relief was denied."); see, e.g., In re Harris, 2005 Bankr.
LEXIS 1629, *16 (Bankr. N.D.Ga. 2005) (holding that section 109(g)(2) applies under any theory
of interpretation because "the Court is persuaded that the Debtor dismissed the case with the intent
of avoiding the entry of an order lifting the stay and refiling prior to the next scheduled foreclosure
sale."); In re McAlister, 2001 Bankr. LEXIS 2436, *15-16 (Bankr. D.S.C. 2001) (holding that
"under either interpretation of §109(g)(2)" the 180-day bar to refiling clearly applies if the debtor
intends in the second case to delay the foreclosure sale of the creditor who previously obtained
relief from stay).

[6] Rivera v. Bracetty Matos (In re Rivera), 494 B.R. 101, 105 (1st Cir. BAP 2013) ("Congress
enacted § 109(g)(2) in 1984 for the purpose of curbing what it perceived to be abusive repetitive
bankruptcy filings by debtors.  The typical scenario that the provision is intended to prevent is a
debtor's voluntary dismissal of a case and subsequent refiling of a new case for the purpose of
preventing creditors from acquiring relief from the automatic stay and pursuing foreclosing
remedies in state court proceedings.  The statute gives secured creditors a 180-day window to
pursue state law remedies free of the automatic stay." (citations and quotations omitted)).

1    **II.    THE TRUSTEE'S MOTION TO DISMISS.**

2         The debtor in this case filed a chapter 12 petition and proposed a chapter 12 plan.  The

3    primary secured creditor opposed confirmation of the plan and also filed a motion for relief from

4    stay.  Ultimately, the court concluded the chapter 12 plan was unconfirmable and denied

5    confirmation.  Given the delays in the case and the failure of the debtor to present a confirmable

6    plan, the court also granted relief from the automatic stay.

7         At the hearings regarding confirmation of the plan and the motion for relief from stay, the

8    chapter 12 trustee made an oral motion to dismiss the case.  Previously, the trustee had supported

9    confirmation but when the court denied confirmation and granted relief from stay, the trustee made

10   an oral motion to dismiss.  The debtor opposed the oral motion and the court ruled in favor of the

11   debtor.  The court indicated a written motion to dismiss should be filed on regular notice with an

12   opportunity to oppose the motion.

13        Accordingly, the trustee promptly filed the written motion to dismiss and set the matter for

14   a hearing.  In response, the debtor filed a three-sentence brief.  The first sentence described the

15   brief as containing "Limited Opposition".  However, the second and third sentences stated "Debtor

16   respectfully requests this case be dismissed without a bar and not converted to any other Chapter

17   under the bankruptcy code.  The Trustee has not asked for a bar or conversion."

18        This brief by the debtor was unnecessary and problematic.  The trustee had not requested

19   that the court convert the case or dismiss it with a bar to refiling.  The debtor's brief admits as

20   much.

21        Importantly, the three-sentence brief by the debtor contained no substantive opposition to

22   the motion.  The debtor did not argue against dismissal for any reason.  Thus, the debtor likely

23   intended in the brief to communicate the idea that the debtor acquiesced to the dismissal of the case

24   and wanted to insure that the only relief granted should be the only relief requested: dismissal

25   without a bar to re-filing.

26        Unfortunately, the debtor used problematic language in the second sentence of the brief.

27   Rather than stating something like "the debtor opposes dismissal with a bar or conversion because

28   no one has requested such relief" the debtor wrote "Debtor respectfully requests that this case be

dismissed without a bar . . . ."  Seizing upon this language, the secured creditor then filed its own responsive brief arguing that, in light of the language in the debtor's brief, the case must now be dismissed with a 180-day bar to refiling the case pursuant to the plain language of section 109(g)(2).  That statute forbids a debtor from filing a new bankruptcy case for 180 days if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."  Given this language, the secured creditor contends that the debtor has now (in effect) either joined in the motion to dismiss or presented its own request to dismiss.  In doing so, the creditor argues the debtor has triggered the mandatory provisions of section 109(g)(2) that require dismissal with a 180-day prohibition.

The argument by the secured creditor does not lack merit.  The brief filed by the debtor did not provide any reasons in opposition to dismissal.  Nothing in the brief opposed dismissal.  In addition, the debtor (unfortunately) used in the second sentence of the brief the word "requests" which is the present tense version of the very word contained in section 109(g) ("requested").

In light of this unexpected development, the court thought it fair to allow the debtor to file a second brief.  Although the local rules do not contemplate additional briefs under these circumstances, it seemed fairest to allow the debtor to respond to the brief and arguments filed by the secured creditor.  Therefore, prior to the hearing regarding the trustee's motion to dismiss, the court issued a scheduling order that continued the hearing and requested further briefing from all sides.  The court did not wish to rule on the matter without an opportunity to consider briefing regarding the application of section 109(g)(2).

At this point, the question of whether or not section 109(g)(2) applied presented a debatable issue.  Fair arguments existed on both sides and it could have been a "close call" either way.  See, e.g., In re Walker, 171 B.R. 197, 202-03 (Bankr. E.D.Pa. 1994) (holding that the 180-day bar to refiling did not apply because the "the Debtor's failure to oppose our dismissal of his case was not tantamount to a voluntary dismissal" but describing the decision as a "close call").  Unfortunately, the next step by the debtor significantly changed the situation and proved fatal to its contentions.

**III.    THE EMERGENCY MOTION BY THE DEBTOR.**

The debtor responded to the court order continuing the hearing regarding the motion to dismiss and setting a briefing schedule by filing an emergency motion.  In the emergency motion, the debtor (for the first time) admits that it seeks to immediately file a new chapter 12 case.  In the past, the debtor had announced an intention to appeal the orders denying confirmation and granting relief from stay.  However, in the emergency motion, the debtor announces a new strategy of intending to file a new chapter 12 case immediately upon dismissal of this one.

In order to accomplish this plan, however, the debtor needs the current case dismissed immediately.  For the first time, the debtor informs the court that a foreclosure sale will occur in three days (January 13, 2022).  Therefore, the emergency motion asks the court to vacate the scheduling order and hold the hearing regarding the motion to dismiss immediately.  The entire thrust of the emergency motion asks the court to immediately hold a hearing regarding the motion to dismiss and dismiss the case with no bar to refiling so that the debtor may file a new case to stop the foreclosure sale.  Indeed, the last sentence of the motion ends as follows: "Debtors respectfully request this Court reinstate the dismissal hearings on January 12, 2022 or earlier, and enter the dismissal orders moved for by the [chapter 12 trustee]."

This motion and request undermine the entire strategy of the debtor.  It is now impossible for the court to dismiss the case without a bar to refiling.  If the court must dismiss the case, section 109(g)(2) would clearly apply.

The debtor argues that section 109(g)(2) does not apply because the trustee, not the debtor, initiated the pending motion to dismiss.  However, parties may join in any motion or they may make their own independent requests to dismiss.  As to the former, the debtor has clearly done so.  Indeed, at this point in time, the debtor is now the primary advocate for the trustee's motion to dismiss.

Whereas the trustee seems content with the scheduling of the motion to dismiss, the debtor is not.  The trustee has not filed an emergency motion to advance the hearing date and dismiss the case.  It is the debtor, not the trustee, who has made this request.  The debtor has not only joined in the motion but has taken the lead role in advocating for it.  The debtor, not the trustee, has asked

1    the court to immediately conduct a hearing regarding the motion and grant it.  Neither the original

2    moving party (the trustee) nor anyone else has made that request.

3        Although the debtor has not filed a pleading which uses the words "join" or "joinder", the

4    legal effect and language of the emergency motion are unmistakable.  If the debtor truly opposed

5    the motion to dismiss, it would not have filed the emergency motion.  The debtor does not want the

6    court to deny the motion.

7        To the contrary, the debtor wants the court to grant the motion and to do so as soon as

8    possible.  The emergency motion even ends with the words "Debtors respectfully request this

9    Court . . . enter the dismissal orders moved for by the [chapter 12 trustee]."  By its plain terms, this

10    language constitutes (at a minimum) a joinder to the pending motion.  Thus, application of

11    section 109(g)(2) is unavoidable under these circumstances.

12        For example, in In re Nelkovski, 46 B.R. 542 (Bankr. N.D. Ill. 1985), creditors argued that

13    the 180-day bar to refiling set forth in section 109(f)(2) (the predecessor to 109(g)(2)) applied

14    because relief from stay had been granted and the debtor failed to oppose a motion filed by

15    creditors to dismiss the case.  The creditors argued that by failing to oppose the motion to dismiss,

16    the debtor had "requested and obtained" dismissal within the meaning of the statute.

17        The court rightly rejected this argument.  It makes no sense to hold that a debtor who does

18    nothing in response to a motion to dismiss has "requested" anything.  See, e.g., In re Arena,

19    81 B.R. 851, 855 (Bankr. E.D.Pa. 1988) (holding that the failure of a debtor to appear at a hearing

20    regarding a motion by a creditor to dismiss the case "is not the equivalent of a voluntary

21    dismissal."); In re Gamble, 72 B.R. 75, 77 (Bankr. D.Idaho 1987) (quoting Nelkovski and

22    concluding that "the Debtors' failure to object to the Motion to Dismiss, taken alone, is not

23    sufficient to bring this case under the purview of 11 U.S.C. § 109(g)(2).").

24        The Nelkovski court stated:

25        "Various creditors herein have argued that following a motion to lift the
26        stay, a debtor's failure to oppose a motion to dismiss constitutes a voluntary
         dismissal 'requested and obtained' by the debtor as set forth in subsection 109(f)(2).
27        This construction would prevent refiling if the debtor did not oppose or otherwise
         object to the motion to dismiss after the creditor had moved to lift the stay.  On
28

1

2

November 28, 1984, the Nelkovskis appeared and offered no objection to the dismissal of their cases.

3

4

5

6

"The court disagrees with the creditors' construction of the statute.  Failure to oppose a motion to dismiss cannot be reasonably presumed to equal requesting and obtaining a dismissal.  Conversely, the clear language of the subsection seems to indicate that the debtor must move for dismissal in order to make this subsection operative.  **Upon a creditor's motion, the debtor must at least request dismissal.**  Failure to oppose dismissal, without more, is not enough to bar the debtor from refiling within the 180-day period of 109(f)."

7

<u>Id</u>. at 544 (emphasis added).

8

9

10

11

12

13

14

The penultimate sentence is key.  Once a creditor (or a trustee) files the motion to dismiss, the debtor "must at least request dismissal" in order for section 109(g)(2) to apply.  **That is precisely what has occurred in this case**.  The debtor in the case at bar has not only requested dismissal in two briefs but has asked the court to issue a scheduling order advancing the hearing regarding the motion and then granting it forthwith.  Contrary to the warning in <u>Nelkovski</u>, the debtor in this case did not remain silent and, instead, has become a stark advocate of the motion to dismiss.

15

16

17

18

19

The <u>Walker</u> case also provides some guidance on this issue.  In <u>Walker</u>, the debtor filed a chapter 13 case and, thereafter, a creditor moved for relief from stay.  Later, the court dismissed the case due to the failure of the debtor to file case initiation documents.  Before doing so, however, the court held the hearing regarding relief from stay and counsel for the debtor stated at the hearing that "[i]f the Court wishes to dismiss the case it can dismiss the case." <u>Walker</u>, 171 B.R. at 200.

20

21

22

23

24

25

26

When the debtor then filed a second chapter 13 case, a creditor asserted that section 109(g)(2) applied because the comments of counsel for the debtor at the hearing in the first case constituted a request for dismissal.  The bankruptcy court disagreed and held that counsel for the debtor "was careful, in the colloquy . . . . to characterize the dismissal as an act of this court." <u>Id</u>. at 203.  The court in <u>Walker</u> ruled in favor of the debtor but it considered the decision a "close call". <u>Id</u>. at 202 ("[T]he decision of whether the Debtor's instant filing violated 11 U.S.C. § 109(g)(2) was a close call.").

27

28

In contrast to <u>Walker</u>, the debtor in this case has gone much further.  The debtor has specifically "requested" dismissal of the case twice and filed an emergency motion seeking (a) an immediate hearing on the motion to dismiss and (b) immediate granting of the motion to dismiss.  Thus, under any reasonable interpretation of the plain language of section 109(g)(2), the debtor has "requested . . . the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."  If the court grants that request, then the debtor will have "obtained" dismissal and the 180-day bar of section 109(g)(2) will apply.

## IV.    CONCLUSION.

The debtor has filed an emergency motion for the express purpose of obtaining an order dismissing this case immediately.  In the motion, the debtor declares its intention to then immediately file a new bankruptcy case to stop a foreclosure sale scheduled in three days by a creditor who recently obtained relief from the automatic stay in this bankruptcy case.  Section 109(g)(2) exists for the express purpose to prevent this conduct.  Under any interpretation of section 109(g)(2), Congress designed the statute to prevent precisely these steps contemplated by the debtor.

###

Date: January 10, 2022

Wayne Johnson
United States Bankruptcy Judge

- 13 -